Thank you, Your Honor. Brendan McNeil, appearing for Plaintiff Appellant Gurmahinder Singh. I'm looking to ask for three minutes of rebuttal, and I'll be keeping time on my end as well. Thank you. And please, the Court, the issues in this case, and certainly the issues presented by Google's reply brief here, would seem to indicate that this is a complicated issue. But we honestly believe, as the plaintiffs, that the only issue this Court needs to decide here is whether the proper pleading standard was applied to Google's motion to dismiss the plaintiff's Fourth Amendment complaint. Now, the standard set forth by this Court in Taylor v. E. and Enri Trafka is that at the motion-to-dismiss phase, the District Court must construe the reasonable inferences in the non-moving parties, that is, Singh's favorite. Now, we believe that... Excuse me for interrupting. No, no worries. This complaint was filed, as I understand it, after all discovery in the case was over. That's correct, Your Honor. Well, Your Honor, it was an ongoing process as we kept amending our complaint, I should say. Yeah, but the one that is before us now was filed after all the discovery was over, yes? That's correct, Your Honor. Though, again, if we were going back down to the District Court, we would have to reopen discovery, of course. Well, you haven't asked for that yet, right? You didn't say to us, you please order the District Court to reopen discovery? No, Your Honor. What we're looking for here is simply for this court to address the question of the pleading standard. Yeah, but my question is, isn't that pleading standard somewhat to be taken in the context of what stage of discovery you're at? It's one thing to say that when one files a complaint at the beginning of a lawsuit and you haven't had any discovery, then notwithstanding cases like Iqbal and Twombly, you have to give a certain recognition to the fact that no one's had any discovery, and so there's only so much you could expect them to know. By contrast, here, the court was dealing with a complaint that was filed after all the discovery was over, so you had everything that you had asked for to fill in the blanks, so isn't that relevant to our assessment? Well, Your Honor, it certainly is, but we believe, again, that the pleading standard that's applied here would still give us standing in this case. The District Court was under an obligation to construe our allegations in the light most favorable to us and draw reasonable inferences in our favor. We believe the allegations that we provided- gaps in evidence with inferences, but actually required evidence of any inference you would need-could you survive summary judgment with the allegations you have here? Absolutely, Your Honor. We have allegations that show-oh, I should just go ahead and say that the basis of our allegations in our lawsuit is that Google is misrepresenting the effectiveness of its AdWords filters, and our allegations at the heart of this complaint are simply that our client, Singh, would not have continued to use AdWords had he known the click fraud filters on AdWords were not as effective. Counsel, I have a question. In your third amended complaint, you alleged that your client spent $200,000, more than $200,000 on AdWords, and you didn't repeat that allegation in the fourth amended complaint. Why? Well, Your Honor, because there are, as the court in QuickSet has said, there are innumerable ways in which to allege economic injury. That's not the only way we needed to allege economic injury here. Even if that's true, why did you take that out? Did you take it out because it wasn't accurate? Was it a mistake? Was it an oversight? Did you do it deliberately? Why did you take it out of the fourth amended complaint? Well, Your Honor, we had a... Oh, go ahead. Sorry. No, no, no. Go ahead. We had a lot of pushback from the district court relating to any evidence we could provide that Singh had paid for invalid clicks. Now, we believe that, again, reading the allegations and drawing inferences in Singh's favor, saying, for instance, that Singh has been paying for invalid clicks. We believe that that is an inference that he has been paying for invalid clicks. But, again, the district court... So, you brought this study in 2018 that you say shows that, but wouldn't you need to show that it had been true before you filed the original complaint in 2016? Well, Your Honor, that's where the inferences in our favor come in, and that's where the secondary sources are helpful. It's very difficult for us... But in summary judgment, I mean, my understanding from what you've alleged is that you haven't really even alleged that the 2018 study is representative of what was going on in 2016 or that Google's filters haven't materially changed since 2016. It seems like there are gaps that you would need to fill in for the evidence to really show that your 2018 study tells us something about 2016. And it seems like at a motion to dismiss stage, maybe you get those inferences, but you actually are kind of at the summary judgment stage. So, I'm just really struggling with how you could survive summary judgment. Well, Your Honor, I disagree that we're at the summary judgment phase, but in any event, I would say that, again, just looking back at the allegations that Singh has pled, he has secondary sources that show that going back to as far as 2012, the AdWords platform has been subject to much greater rates of click fraud than Google has represented to consumers. So, the logical leap that we are asking this court to make and that we may ask the district court to make was that, well, if those levels of click fraud are occurring on the Google platforms from 2012 onward, and those levels of click fraud are occurring on Singh's accounts in 2018, then it follows that Singh has been paying for invalid clicks since then. But in any case, Your Honors, Singh doesn't need to specifically allege just that. He has also shown that the Google AdWords platform has higher rates of click fraud than it has advertised, and he has specifically pled that had he known that fact, he wouldn't have been paying for the AdWords service or for these clicks. We believe that at this stage in the proceedings, the plausibility standard provided by Twombly and Eichball was what the district court needed to follow in. As Twombly and Eichball state, Singh here did not have to prove his case in the UCL and FAL standing, and we believe that when you read his allegations together, it's very clear that he was not at that, excuse me, Your Honors, that it's clear that Google's AdWords platform was subject to higher rates of click fraud than Google advertised. And so, on that score alone, Your Honors, we have alleged that Singh would not have paid for AdWords had he known that, and the additional fact, Your Honors, is that Singh has paid for more clicks than he bargained for. We believe that those are the reasonable inferences that can be made in this case, just based on the pleading standards here, which call for a district court to take the complaint on its face, draw the facts and inferences in Singh's favor. We believe that these other questions about summary judgment... You have more evidence than you've described of how he paid for more clicks than 10% fraudulent clicks. Do you have more evidence of the 2018 being representative of what was going on in 2016 than you've described in the complaint? Well, Your Honor, at the very beginning of this case, the plaintiff, Singh, had actually conducted his own studies on his AdWords accounts. And that went back to even before we filed this complaint. However, the district court told us that those were not reliable tests and admonished us from using those in a complaint. So that evidence, we believe that was not a correct ruling. But again, that's not something that is up on appeal necessarily, just because that was the first and second amended complaints. But in any case, we believe that, yeah, there is evidence through these secondary sources that throughout the Google sphere, on all of its advertising platforms, including AdWords, there was widespread click fraud. And again, the reasonable inference when looking at these Soxford studies is similar, that Singh's own AdWords accounts were subject to AdWords. Counselors, I take one of your arguments is that the district court at the pleading stage was essentially applying a Daubert standard to what you had alleged, and that that should wait for a Daubert motion with regard to summary judgment. Is that your argument? That is one of our arguments, Your Honor, and also that this is a summary judgment standard on the pleadings as well. But again, it just is because of how this played out that the complaint here was after discovery was over. I mean, I think you may actually have a good point that under the motion to dismiss standard, the complaint shouldn't have been dismissed. But it's just a very odd position, because if the judge is basically saying, you'll never survive summary judgment, then I'm not sure what the and if we think she's probably right about that, then I'm not sure what the point is for us to send you back to just go immediately into summary judgment briefing with the same issues that you had at the motion to dismiss. Well, Your Honor, we believe again that that's a point that we would address with the district court. We believe that at this stage, the only question is just the pleading standard. I understand and appreciate what your point is. And we believe that again, if we went down to the district court, one of the things that we would ask for now, whether or not we would get it, it's a different question. But one of the things we ask for with it would be in reopening of of discovery. And we believe that at this stage, the only thing that this panel needs to address is simply the pleading standard at the proper pleading standard at the pleading stage and reserve. Oh, sorry, Your Honor. Let's discovery did you would you ask for that you didn't ask for previously? Well, Your Honor, we definitely would look for more information regarding click fraud, more information from Google regarding when it's whether or not it knew that there are heightened levels of click fraud on its platforms, et cetera. Why did you ask for that before? Well, Your Honor, we were we were stuck at the motion to dismiss states. And at that point, we were merely trying to get over this hurdle that kept getting higher and higher for UCL and FAL standing. But my understanding is the whole course of discovery has run. I mean, it seems like you were sort of at the motion to dismiss stage. But if you wanted information from Google about click fraud, didn't you have that opportunity to get it? Well, Your Honor, that we don't think we did. We don't think we had the full opportunity to get that information because we're limits. I mean, did the district court imposed limits on what type of discovery you could take? Not to my recollection, Your Honor. But again, we we were focused on the the motion to dismiss finding information that specifically got us UCL and FAL standing, gave us information that or gave us allegations that would prove that we suffered an economic injury. Did you ever ask for a stay? I mean, if you had a year for discovery or whatever the period was, did you ever say, could we could we stay this period because we might need to ask different things depending on what happens or anything like that? Not to my recollection, Your Honor, no. I see I have about a minute left, so I'll reserve that time for rebuttal. Thank you. Thank you. Good afternoon. Good afternoon, Your Honor. My name is Brian Willen. I represent Google in this matter. Appellant wants to be able to bring a claim in this case without making any plausible allegation that he actually lost money as a result of Google statements. California law doesn't allow that result, and the district court was correct to dismiss this case. Counsel, in the third amended complaint, plaintiff alleged I spent $200,000 on these campaigns and has alleged throughout that if I had known the truth, I wouldn't have signed up. And the district court said basically, without even discussing the $200,000, that's not what you have to show. You have to show that you specifically paid for fraudulent clicks in excess of 10%. I don't understand why that is required for standing. Why isn't it enough to say as the plaintiff in the third amended complaint, I spent $200,000 and I wouldn't have spent this money had I known the truth, which is you're saying 10 to 15% and it's way, way higher. Why isn't that enough for standing? Whether that can get him past summary judgment is a totally different question. But why for standing does he have to demonstrate particular clicks that he paid for that were fraudulent? Sure. It has to do with the nature of this particular service and these particular statements. So a couple of things that we know clearly from both California law and from this court's decisions. The first is that simply paying for a service or a product isn't in and of itself an injury under the UCL or FAL. Paying for a service is not a loss of money or property. And the second thing that we know... So it wouldn't be a loss, for example, if the facts alleged were I signed up for this, Google said 10 to 15% and 95% of the clicks were fraudulent. But I can't tell you exactly which ones. That wouldn't state enough of an economic injury to establish standing? No, I think we've said throughout this case, and then the district court said so as well, that if he could allege facts from which it was plausible to conclude that the representations Google made about the efficacy of its filters were inaccurate as applied to him, to Mr. Singh, that would get him over the standing threshold. That was exactly the issue. I'm not sure I understand why that has to be the standard if it's, you have said your fraud is about 10 to 15%. I know that's not exactly what the representation was. And he's alleged it was way higher in general. And if I'd known that I never would have spent this $200,000, I don't understand why that doesn't state a sufficient economic injury, regardless of what his actual click fraud rate was at the standing pleading stage. Well, the reason for that is that if we assume a world in which he, in fact, was protected from, let's say, 90 or 100% of invalid clicks, he says Google's filters were less effective. We say that they weren't. But assume a world in which he was protected from all invalid clicks, that the filters may not have been effective generally, but were effective as to his account. In that world, and this is exactly what the district court said, he wouldn't have lost any money or property as a result of the statements. He would have gotten from Google exactly what he wanted for, what he wanted, exactly what he bargained for, and exactly what he says he paid for, which is protection from 90% or 95% of invalid clicks on his account. So supposing Google had said, we protect you against all fraud, 100% of false clicks. And in my hypothetical, Google knew that was a total lie. They had no idea. But they also knew that it would be impossible for any party, any customer to ever show that they personally lost money on the clicks. So they figured this is the perfect fraud, we can get away with it. And you're saying that would not be actionable under California's false advertising or other? Well, I mean, I think the hypothetical that you're positing, which is not this case, is maybe one that raises some different questions about the nature, whether we would somehow relax that standing rule because of the knowledge that nobody could ever satisfy it. I don't know. Here, of course, and this goes to the colloquy that you were having with Mr. McNeil, is that we have the odd fact of this case that the fourth amended complaint, the operative complaint here, was filed two months after the close of Discovery. And so he had every opportunity and really the point of Judge Friedman giving him the opportunity to submit a fourth amended complaint was to take any information that he had gleaned from Discovery and any further information that he had and put it in that complaint. So the idea that somehow he wouldn't have had the means to make the allegations that the inquiry just is, it doesn't jive with how this case played out. Even if the district court was right about you have to demonstrate fraudulent clicks on your account, even one, you have to prove a particular click was fraudulent or you don't have standing no matter how much you spent. Even if that were correct, why isn't it a permissible inference to draw at the pleading stage that 2018 studies, which plaintiff alleges showed higher fraud rates than Google represented, an inference that that was true prior to 2018? At the pleading stage, why wouldn't that be a permissible inference? The district court threw out his own experiments at the pleading stage saying that they weren't plausible. Why wouldn't the 2018 studies, why wouldn't we be able to draw an inference, a backward inference on that at the pleading stage? Well, I think there's several problems with the 2018 studies. There's two of them. I mean, the first one, the MMI study doesn't tell you anything whatsoever about any rate of invalid clicks. It simply said they found 50 invalid clicks. There's not even a suggestion that those 50 clicks wouldn't have been or weren't found by Google. So I think that one's pretty easy just to dismiss without getting into anything like Daubert. It's just not plausible. The Oxford Biocon study, which is the other study, the main problem with it is there's no sense that the overall rate of clicks for any relevant period of time, certainly for a monthly billing period or year to say anything of his overall experience as a Google advertiser, was in any way different from the representations. He had five campaigns that he looked at in that study and curiously enough, only put two of them in the complaint. Yeah, that's what the district court said. That certainly seems to me to be a summary judgment kind of an issue. But is it correct that Google doesn't identify in its billing statements which particular clicks it's billing for and which it isn't? Or does the plaintiff given something that amount that he's charged for every month? Well, I think it's true that in sort of the ordinary course of an advertiser's monthly billing statements, they're not necessarily seeing particular clicks. They're seeing the number of clicks that were filtered out, the number of clicks that were valid. They're getting information about the efficacy of the filters and how the filters work. But I don't think it is granular to any individual click. Now here, of course, he had the mechanisms of civil discovery if he wanted to get access to that information to the extent that it exists. And I think it probably does, at least in some form. But he went through discovery and never even asked for it, much less got anything that would have informed the analysis that went into the fourth amended complaint. But are you saying that if he had filed this complaint initially before discovery, and at that point only had the general billing information that Judge Bennett was just referring to, so he at that point did not know the names or localities or whatever of specific people who had clicked, but he did know that there were studies that suggested that it could be much higher than had been represented, are you saying that he still would not have had standing at that state? Well, I mean, two things on that. So first of all, I mean, I do think, as the court suggested, that it does matter and it can be taken into account of in thinking about the Iqbal and Twombly standard, where we are in a case and if we're at the end of discovery versus the very beginning. I'm sorry, go ahead. Please go ahead and answer Judge Rakoff's question. I apologize for interruption. Sure, but the second and in some sense more important, sorry, the second and in some sense more salient point here is that we, neither we nor I think Judge Friedman took the position that he has to, for purposes of the pleadings, point to particular clicks that were invalid. That's not what the district court found and that's not what our position is. Our position is simply that he has to allege facts from which it is plausible that he, during some relevant period of time, suffered and was charged for invalid clicks at a greater rate than the rate that he says Google promised him. That's the standard. It's not really about particular clicks, it's about the overall rate of clicks that were filtered out. And it's our position, and this was what the district court, I think, rightly found, looking carefully at the complaint, but not applying Daubert, but applying Iqbal and Twombly, said, look, even if I take the allegations and this complaint is true, that's not what it alleges. It does not allege that Mr. Singh, over the course of some relevant period, be it a month, certainly the entirety of his time as an advertiser, actually experienced a rate of invalid clicks that Google's filters failed to filter out that was greater than the 90% rate that he says the statements promised him. So that's the fundamental failing that goes to standing. I do want to address the alternative. I do want to ask one other question. So are you familiar with any case that says that the pleading standard in terms of plausibility is different if you're dealing with your first complaint, as opposed to your third complaint? I'm not talking about the district court's does it? Is there a case that says you have to show more specificity if you're filing it two years in, as opposed to initially? Or is it a standard, no matter what complaint the district court is looking at, if the district court is looking at the complaint standard? Yeah, I'm not familiar with a case that says that. It, frankly, is not an argument that we and I don't read the district court's decision as being based on some different standard. Although I do think that given that the test is plausibility under under Iqbal and Twombly, that's obviously a common sense and flexible standard that can be tailored to the particular circumstances that the court has in front of it. And I do think it's pardon the pun, but plausible to conclude that there's the evidence that is in the plaintiff's possession at the time that the complaint is filed matters or can be at least thought about in thinking about whether the complaint plausibly alleges facts sufficient to state a claim. Now, so I don't have a case that sort of chapter and verse for that, but it does seem sort of a common sense proposition to me. If I could just very quickly talk about the alternative sort of non-standing arguments that we've made, which I think are an independent basis for affirming the district court's decision here and were issues that were both discussed and in a sense ruled on by the district judge, certainly argued below, argued in our brief and not responded to in the appellant's reply brief. I mean, the fundamental problem with this case is that it is based on the theory that Google statements warranted or promised to Mr. Singh and to Google advertisers, a particular rate of invalid click detection. He said something like 90 or 95%. And that claim as Judge Freeman recognized, runs headlong into the language of section eight of the 2006 agreement, section five of the 2013 agreement, both of which very clearly say Google is not representing or warranting any particular advertising results and particularly any result relating to clicks. And so what he's essentially trying to do is make a claim that is directly precluded by the language of the contract. So that theory, just as a matter of law, fails. Judge Freeman recognized that in dismissing the third amended complaint. She didn't have occasion to rule on the merits in dismissing the fourth amended complaint because she decided the case based on standing. If she had, I'm quite confident she would have dismissed it on the merits for exactly this reason, because it's what she said said previously. But it's certainly a basis on which this court could affirm without having to loss of money or property inquiry. The second... Let me cut you off because you're over your time. We do have your briefing on these other two issues. So thank you for your arguments. And let's go back to Mr. McNeil. I'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honor. I just want to briefly touch on something that counsel for Google kept bringing up, which was this notion of plausibility and how it related to Singh's allegations. Just from previously discussing this, Singh's first complaint had contained studies that, from his own account, that showed click fraud rates that were well above what Google advertised. And then this Oxford study in the third and fourth complaint, or excuse me, the fourth complaint showed, again, click fraud rates well above the click fraud filter or the amounts caught by Google's click fraud filters. And yet the district court continued and Google continues to argue that somehow we have not plausibly alleged that the click fraud filters on Google's accounts were faulty or not as effective as Google alleged. And this really gets to the heart of our complaint with what the district court decided, which is taking a pleading standard, taking allegations that we believe plausibly alleged that Google's click fraud filters were not as effective as advertised, and basically applying a much higher standard, a summary judgment standard, and questioning the validity and the reliability of these studies. We believe that the district court had applied the correct pleading standard. This question of plausibility would obviously rule in our favor, go in our favor, because, again, we believe that through that first complaint and all the way up through this fourth complaint, we have alleged that Google's click fraud filters are not nearly as effective as Google has advertised. And again, we urge this court to apply the correct pleading standard and find that we have adequately alleged, excuse me, UCL and FAL standing. Thank you, your honors. Thank you both sides for the helpful arguments. The case is submitted and we're adjourned for the day. All rise. This court for this session stands adjourned.
judges: Friedland, Bennett, Rakoff